# Case No. 15-71103

# *IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT*

---

**COMMISSIONER OF INTERNAL REVENUE**,

Respondent /Appellee,

v.

**JOSEPH R. BANISTER**,

Petitioner / Appellant.

---

ON APPEAL FROM THE OPINION
BEFORE THE UNITED STATES TAX COURT
HON. MARY ANN COHEN, JUDGE PRESIDING
U.S. TAX COURT CASE NO. 30500-12

---

BRIEF FOR APPELLANT BANISTER

---

Joseph R. Banister
Pro Se
1805 N. Carson St., Ste C
Carson City, Nev. 89701

Dated: July 30, 2015

# TABLE OF CONTENTS

Jurisdictional Statement. ............................................................. 1

Statement Of The Issue. ............................................................. 2

Statement of the Case. ............................................................. 2

    A.  Proceedings in the Tax Court. ............................................ 2

    B. Statement of the Facts. ................................................... 4

Summary of The Argument. .................................................... 13

Argument ..................................................................... 15

Issue 1. ...................................................................... 15

Conclusion. ................................................................... 53

Certificate of Service ........................................................... 54

Certificate of Other Cases On Appeal.......................................... 54

Certificate Of Word Count....................................................... 54

## JURISDICTIONAL STATEMENT

The Appellee, Commissioner of Internal Revenue ("CIR"), mailed Appellant, Joseph R. Banister ("Banister"), a document styled as a Notice of Deficiency ("NOD") on September 17, 2012 regarding his 2003, 2004, 2005, and 2006 calendar years. The tax court's Docket Entries ("D.E.") show that Banister timely filed his Petition on December 18, 2012. (D.E. 0001). Due to a signature issue the tax court ordered Banister to amend his Petition. *See* (D.E. 0002). He timely complied. *See* (D.E. 0003).

Pursuant to 26 U.S.C. § 7442 Congress vested the tax court with jurisdiction with respect to proposed deficiencies (*see* 26 U.S.C. §§ 6211-6214) related to a specific liability for the federal income tax imposed by subtitle A of the Internal Revenue Code ("IRC"). Despite the fact the CIR was unable to put his finger on the applicable liability provision, the tax court entered its opinion in favor of the CIR on January 12, 2015 (D.E. 0046). Since the CIR did not put his finger on a liability provision to validate the proposed deficiency, Banister questioned the tax court's subject matter and *in personam* jurisdiction (D.E. 0048). Protecting the CIR and its January 14th decision, the tax court denied Banister's motion without a hearing. (D.E. 0049). Banister timely filed the notice of appeal to this Court on April 7, 2015. (D.E. 0050). This court's jurisdiction over this appeal is obtained via 28 U.S.C. §1291.

1

## STATEMENT OF THE ISSUE

**ISSUE 1: Did the tax court abuse its discretion by denying Banister's Motion For An Offer Of Proof and Motion To Dismiss without rendering meaningful findings of fact and conclusions of law regarding the contents of those motions, contents that addressed the very jurisdiction of the court and called into question the validity of the CIR's unreported income, failure to file and deficiency allegations and did the tax court err by deciding that there are deficiencies in federal income tax and additions to tax and penalties due from Banister despite working from a court record indicating that although the tax gatherer (the CIR) put his finger on Banister, the tax gatherer failed to put his finger on the law permitting it.**

## STATEMENT OF THE CASE

### A.    Proceedings in the Tax Court.

On September 17, 2012 the CIR mailed Banister the proposed NOD regarding the Relevant Years. *See* Docket Entry ("D.E.") 0003 Amended Petition. As attached to D.E. 0003, the NOD proposed a deficiency allegedly resulting from some underlying federal income tax liability arising from some section of the Internal Revenue Code ("IRC"), although the record in this case establishes that the CIR never specified such a liability provision in the NOD or anywhere else. The closest the CIR could seem to come to specifying a liability was in his answer where for each year in question he "alleges Petitioner's tax liability for the taxable year…is set forth in the notice of deficiency at issue in this case". *See* EOR Vol. 2 E, pp. 2-3. In comparison to the CIR's failure to specify the law that established Banister's underlying liability for the tax, the CIR was able to specify in the NOD the penalty

2

provisions 26 U.S.C. §§ 6651(f), 6651(a)(2), and 6654, designating penalty amounts added to Banister's allegedly deficient underlying liability for the tax, an underlying liability that, again, the CIR failed to specify.

To illustrate this phenomenon, observe this rendition of the Table found on the first page of the CIR's NOD (*see* EOR Vol. 2 F, p. 14) as follows with emphasis added in the heading:

| Year | **DEFICIENCY** | 26 U.S.C. § 6651(f) | 26 U.S.C. § 6651(a)(2) | 26 U.S.C. § 6654 |
|------|----------------|---------------------|------------------------|------------------|
| 2003 | $ 48,362.00 | $ 35,062.45 | $ 12,090.50 | $ 1,247.81 |
| 2004 | $ 60,685.00 | $ 43,996.63 | $ 15,171.25 | $ 1,739.07 |
| 2005 | $ 43,214.00 | $ 31,330.15 | $ 10,803.50 | $ 1,733.35 |
| 2006 | $ 27,525.00 | $ 19,995.63 | $  6,881.25 | $ 1,302.61 |

Note how the penalty provision columns all specify a particular section of the IRC but the "**DEFICIENCY**" column does not specify a section of the IRC. Banister maintains on appeal, the entire NOD (as well as the entire record) is devoid of any law establishing Banister's underlying liability for the pretended amounts shown in the deficiency column. This opening brief will attempt to explain why the CIR failed to accomplish the simple task of specifying what law established Banister's liability for the alleged income tax deficiency, a failure fatal to each and every tax and penalty allegation the CIR has asserted and a failure that the tax court refused to acknowledge or address.

On September 8, 2014 the tax court trial took place before the Hon. Mary Ann Cohen in Reno Nevada, and completed on the same day with the tax court finding in favor of the CIR. *See Banister v. Commissioner of Internal Revenue*, T.C. Memo.

3

2015-10 (T.C. 1-12-2015). Banister filed timely notice of appeal to this Court, and this appeal follows.

## B.    Statement Of The Facts.

### 1.  Background

Banister is appealing the decision rendered by the tax court on January 12, 2015. The court's opinion offered a very brief synopsis of Banister's background, much of which was taken from enumerated stipulation statements authored by the CIR, statements that were arguably selectively and narrowly prepared in order to more negatively portray Banister's background. Interestingly, the stipulation exhibits authored and entered into the record via the CIR's granted Motion for Order To Show Cause provide significantly more detail than the enumerated stipulations. Yet, these wider details appear to have been overlooked by the tax court.

Drawing attention to the overlooked details is necessary because evidence of Banister's good faith efforts would otherwise be excluded from consideration and only the details mentioned by the tax court would be considered. Given the severity of the allegations in this controversy, built largely upon the CIR's impugning of Banister's character and good faith, a more thorough review of Banister's background is warranted.

Banister graduated from San Jose State University in 1986 earning a bachelor's degree in Business Administration – Concentration in Accounting. Soon

4

after graduation Banister accepted a position with KPMG in San Jose. For the first approximately two years with KPMG, Banister was assigned to KPMG's federal tax department, where Banister was promoted to the level of senior tax specialist, wherein a significant part of his duties dealt with federal income taxation for "impatriate" (foreign citizens/nationals living/working in US) and "expatriate" (U.S. citizens/resident aliens living/working abroad). Banister's third and final year at KPMG was spent in the financial audit department, which enabled him to acquire the necessary financial audit experience needed for a Certified Public Accountant ("CPA") license. *See* EOR Vol. 2 G, Ex. 1, pp. 5-7, ¶ 22-29

In 1990 Banister left KMPG to join U.S. Venture Partners ("USVP") in Menlo Park. It was during this time at USVP that Banister completed the requirements for, and earned, a CPA license from the State of California. Also during this time period, Banister discerned a desire to pursue, and did pursue, a career in federal law enforcement. *See* EOR Vol. 2 G, Ex. 1, pp. 5-7, ¶ 22-29.

In furtherance of this desire, Banister submitted applications for a "special agent" (criminal investigator) position to both the Federal Bureau of Investigation ("FBI") and Internal Revenue Service Criminal Investigation Division ("IRS-CID"). In connection with the FBI application process, Banister successfully passed not only an invasive FBI background investigation but also a series of aptitude, analytical, psychological, physical fitness and medical tests. *See* [EOR Vol. 2 G, Ex. 3, p. 2, ¶ 2].

5

Ultimately was placed in a "pool" of qualified candidates waiting for appointment to the FBI Academy in Quantico, Virginia. Due to an FBI hiring freeze brought about by a federal budget stalemate, Banister remained in this candidate pool for a significant number of months until in or around August of 1993 when the IRS Criminal Investigation Division (IRS-CID) contacted him to offer an interview for a "special agent" position with the agency. After a successful interview, Banister was offered the special agent position and by November, 1993 was formally appointed and sworn in as a "GS-1811" IRS-CID special agent. . *See* EOR Vol. 2 G, Ex. 1, pp. 5-7, ¶ 22-29; EOR Vol. 2 G, Ex. 3, p. 2, ¶ 2.

As with any other federal criminal investigative agency, the IRS-CID sends all newly hired special agents to comprehensive law enforcement training, specifically, the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. From approximately January, 1994 through April, 1994, Banister attended and graduated from an 8 week phase of "Criminal Investigator" training followed by and an 8 week phase of "Special Agent Basic" training" at FLETC.

Banister was elected president of his "Criminal Investigator" training class while also earning an "Academic Award" for maintaining a 95% academic average as well as an "Expert Marksmanship" certificate for firearms proficiency. Banister was re-elected president of the "Special Agent Basic" training class that followed and was recognized by FLETC Program Director Parkhurst for having an academic average that "…could only have been attained through strong self-motivation and a

willingness to put forth the extra effort and study necessary to go beyond that which is normally required or expected". *See* [EOR Vol. 2 G, Ex. 3, pp. 6-9].

Upon graduation from FLETC training, Banister began his post-training work as an IRS special agent around May, 1994, first at the San Francisco post of duty and later at the San Jose post of duty, receiving during the next few years a Special Act award (June, 1995), Performance Award (September, 1996), Sustained Superior Performance Award (August, 1997), Top Athlete Award (December, 1997) and was promoted to uppermost grade level available to non-management IRS personnel ("Grade 13") before his 5 year employment anniversary. Banister served as the Organized Crime Drug Enforcement Task Force ("OCDETF") and Asset Forfeiture Coordinator for the IRS Central California District and was even featured in the IRS "CI Digest" magazine for being "honored by East Palo Alto Police Chief Wes Bowling before an overflowing audience that included the mayor, city council members and the news media for CID's contribution to the Citizen's Police Academy Training, as well as our work in the area of narcotic trafficking". *See* EOR Vol. 2 G, Ex. 3, p. 2, ¶ 4; pp. 10-12.

In or around December of 1996, Banister was listening to a morning talk radio show broadcasted on San Francisco station KSFO during which claims were made by a guest on the show that the IRS was deceiving the American public regarding their true obligations in connection with the federal income tax system. Banister, at this point about three years into his IRS career, was surprised at the

7

brazenness of such a claim being made on a radio station and show broadcasted to such a densely populated market. He decided to investigate this claim further, deciding, though, that due to the hard-to-believe/can't-possibly-be-true nature of the claim any investigative efforts would be conducted on his own time and expense as opposed to requesting permission for an official investigation. Banister's initial reaction was basically, no matter how far-fetched the claim might be, the fact that the claim was being broadcasted from a radio station to potentially tens of thousands of people prompted enough curiosity on Banister's part to check into the matter further. Banister did also believe he had a moral and a constitutional duty as well (considering his oath to support and defend the U.S. Constitution) to investigate this claim heard on the radio. Banister spent the following two years, 1997 and 1998, on his own time investigating the basic claim made on the radio that day in December, 1996, namely that the IRS was deceiving the American public about their true obligations under the federal income tax laws. *See* EOR Vol. 2 G, Ex. 4, p. 3, ¶ 1, ¶ 3, ¶ 5.

Contrary to his expectations, Banister's investigative inquiries yielded facts and information that caused him grave concern, so much so that in February, 1999, while still employed at the agency, Banister not only prepared and issued to his IRS supervisors an investigative report entitled *Investigating The Federal Income Tax: A Preliminary Report* but was willing to, and did, resign from the IRS as a result of

the agency's refusal to address his legitimate, duty-bound inquiry. *See* EOR Vol. 2 G, Ex. 4, p. 2; Vol. 2 G, Ex. 5, p. 2-3, Reply to Answer ¶ 7d.

Some of the facts Banister encountered during his investigation in the late 1990s that have continued to be relevant to his personal circumstances, including the case at hand, include:

- The absence of a statute in the IRC making him liable for the federal income tax despite a clear public notification from the IRS each and every year that such a liability must exist <u>before</u> the requirement to file an income tax return and/or pay an income tax can exist.

- The absence of a definition for the term "income" in the IRC and the ramifications of the reason why "income" is not defined in the IRC and the ramifications of what the U.S. Supreme Court has determined the term "income" to mean.

Banister explicitly pointed out that his investigative report was *preliminary* and that the purpose of his report was to "…bring these allegations to the attention of American citizens and government officials in order to generate discussion and debate". *See* EOR Vol. 2 G, Ex. 4, p. 3 ¶ 3; Last sentence of p. 4, top of p. 5; p. 5, ¶ 4; p. 6, ¶ 1.

Banister provided his IRS supervisors with the afore-mentioned report on or about February 8th, 1999 coupled with a request that the "[IRS] Commissioner or his designee respond to the evidence in my report within 30 days." Banister's

9

supervisor Gorini complied with Banister's request to forward his concerns up through the IRS command structure but in response to Banister's inquiries the IRS refused to respond to Banister's request informing Banister "The Internal Revenue Service will not be responding to your request and will provide you with the necessary paperwork to tender your resignation." Banister did resign from the IRS contemporaneously with tendering his resignation letter on February 25th, 1999. *See* EOR Vol. 2 G, Ex. 3, pp. 13-22.

Banister did resign from the IRS contemporaneously with tendering his resignation letter on February 25th, 1999 and from this date through and including the years covered by this controversy Banister has indeed provided information about his investigative efforts regarding the federal income tax system on his website www.freedomabovefortune.com and has spoken frequently to the public about his investigation, continuing research and experiences. For example:

On or before May 5, 1999, less than three months after his IRS resignation, Banister provided a copy of his report "*Investigating The Federal Income Tax: A Preliminary Report*" ("report") to Mr. Robert Schulz for inclusion in a letter delivered to the IRS Commissioner, Charles Rossotti, then President Clinton, Senate Majority Leader, Trent Lott, and House Speaker Dennis Hastert. Not one of the aforementioned officials responded to the letter. *See* EOR Vol. 2 G, Ex. 1, p. 4, ¶ 14; Ex. 4, p. 7, ¶ 5.

In early July, 1999 Banister spoke about his investigative report at the National Press Club where his speech was broadcast live on C-SPAN. On November 13, 1999 Banister again spoke about his report at the National Press Club. On April 13, 2000 Banister and Mr. Schulz met in the White House with Mr. Jason Furman, the Executive Director of the National Economic Council, where among other issues Banister explained his investigative efforts in connection with the federal income tax. *See* EOR Vol. 2 G, Ex. 4, p. 9, ¶ 8; p. 9, ¶ 10; p. 10, ¶ 12.

Banister participated in additional attempts to present and discuss his authentic findings with a number of federal government officials on April 13, 2000, June 29, 2000, and February 17, 2001. Banister also appeared in a full-page advertisement in the USA Today and Washington Times where his investigative efforts in connection with the federal income tax were described. During that time period in 2000 Banister even participated with Mr. Schulz and others to arrange to testify before the U.S. Senate Finance Committee. Banister traveled from San Jose to Washington, D.C. to attempt to testify before the committee, but the committee refused the request. *See* EOR Vol. 2 G, Ex. 4, p. 11, ¶ 13,14; p. 12, ¶ 16; p. 12, ¶ 18; p. 13, ¶ 19; p. 16, ¶ 26, 27.

Rather than engage in a dialogue with Banister the IRS rebuffed his pre-IRS-resignation request for dialogue and snubbed at least nine different public efforts as described above and many other private attempts; choosing instead, to resort to heavy-handed tactics designed to dishonor, discredit, economically destroy, and

even an attempt, unsuccessfully, to incarcerate Banister. The IRS response to Banister's sincere inquiries regarding matters of concern and conscience was to answer his inquiries with enforcement actions. *See* EOR Vol. 2 G, Ex. 3, pp. 19-22; Ex. 4, p. 3, ¶ 1; pp. 17-18, ¶ 29; pp. 19-20.

There are other significant facts and evidence regarding the apparent limited scope of the IRS's authority, and the nature of the federal income tax that were not included in Banister's 1999 initial investigative report. Here we are, some sixteen years later, looking at Banister's latest tax court adventure that proves that the facts, the truth, and due process of law have no home at either the IRS or tax court.

One such piece of evidence that came to light during the criminal trial (from which Banister received acquittal on all counts) was Banister's inquiry to his IRS supervisor, Robert Gorini. During Banister's fact-finding efforts (while still employed at the IRS) he asked Gorini about the IRS organizational charts in the IRS Internal Revenue Manual ("IRM") that indicated a very limited investigative authority against the domestic American public than the IRS had led the public to believe. Banister thought it of extreme significance that the IRS's own internal manuals, copies of which Banister keeps to this day, supported the contention that the IRS's true domestic income tax enforcement authority against domestically domiciled and domestically working Americans was, by the agency's own admission, all but nonexistent. *See* EOR Vol. 2 G, Ex. 4, pp. 19-20.

The aforementioned IRM evidence Banister gathered prior to his 1999 IRS resignation indicating limited IRS authority over domestically domiciled and domestically working Americans is corroborated by laws and rules Banister encountered after his resignation, some of which have been offered into the record in this case, including relevant withholding and reporting statutes, Treasury Decisions and regulations included in Banister's Motion For An Offer Of Proof, have served to significantly influence Banister's determination to incorporate such evidence into any controversies between Banister and the CIR.

## SUMMARY OF THE ARGUMENT

The issues raised and arguments made here on appeal share common ground with Banister's Motion for an Offer of Proof, *see* EOR Vol. 2 C, D.E. 0039, and his post trial Motion to Dismiss for lack of jurisdiction, *see* EOR Vol. 2 B, D.E. 0048. Additionally, portions of the tax court trial transcript avert to the issues Banister petitions this Court to review. *See Banister v. Commissioner of Internal Revenue*, T.C. Memo. 2015-10 (T.C. 1-12-2015). All references to the Commissioner of Internal Revenue ("CIR") include the Internal Revenue Service ("IRS" or "agency").

The issues on appeal concentrate on the CIR's Notice of Deficiency ("NOD"), its ***unreported income*** claims, and the CIR's apparent obsession with dollar figures instead of objective standards. Banister will argue that it is reasonable for this Court to expect the record to contain certain jurisdictional facts in order to allow the CIR

13

to convert **unreported income** (Banister's bank deposit records) into "**reportable income**". To be clear, Banister maintains that **reportable income** translates to **taxable income**. On the other hand, **non-reportable income** translates to **non-taxable income**.

The NOD spanned the 2003, 2004, 2005, and 2006 calendar years ("Relevant Years"). *See* the CIR's Table on the first page of the NOD (*see* EOR Vol. 2 F, p. 14) as follows:

| Year | DEFICIENCY | 26 U.S.C. § 6651(f) | 26 U.S.C. § 6651(a)(2) | 26 U.S.C. § 6654 |
|------|-----------|--------------------|------------------------|------------------|
| 2003 | $ 48,362.00 | $ 35,062.45 | $ 12,090.50 | $ 1,247.81 |
| 2004 | $ 60,685.00 | $ 43,996.63 | $ 15,171.25 | $ 1,739.07 |
| 2005 | $ 43,214.00 | $ 31,330.15 | $ 10,803.50 | $ 1,733.35 |
| 2006 | $ 27,525.00 | $ 19,995.63 | $  6,881.25 | $ 1,302.61 |

Banister will maintain on appeal that the jurisdictional obstacle the CIR and the tax court have yet to overcome manifests itself in the NOD's recapitulation Table itself. See EOR Vol. 2 B, p. 4 top paragraph and p. 5 bottom paragraph. For instance, the CIR admits that the allegedly **unreported** dollar figures were obtained from Banister's personal and business banking accounts. The CIR also admits that the dollar figures shown on the CIR's Table were computed by using deposit details from the seized bank records to arrive at the alleged income tax deficiency, as well as the basis for the various penalty amounts asserted in the Table. *See* EOR Vol. 2 H, beginning at line 11 of p.51 to line 15 of p.54.

A fair reading of that portion of the trial transcript reveals the fact that the testimony of Revenue Agent Mr. Dale Fournier, concentrates on the "**reports**" he'd

generated. However, Mr. Fournier's testimony did not provide any facts to prove that any of the bank deposits seized by his coworkers were "***reportable***" to the CIR by Banister's payors/withholding agents.

In short, Banister will argue that once he challenged the CIR to disclose the specific section of federal law (the applicable liability provision) embracing his facts and circumstances, the CIR sat in silence.

## ARGUMENT

### ISSUE 1:

**ISSUE 1: Did the tax court abuse its discretion by denying Banister's Motion For An Offer Of Proof and Motion To Dismiss without rendering meaningful findings of fact and conclusions of law regarding the contents of those motions, contents that addressed the very jurisdiction of the court and called into question the validity of the CIR's unreported income, failure to file and deficiency allegations and did the tax court err by deciding that there are deficiencies in federal income tax and additions to tax and penalties due from Banister despite working from a court record indicating that although the tax gatherer (the CIR) put his finger on Banister, the tax gatherer failed to put his finger on the law permitting it.**

**Standard of Review:**

> We review the tax court's legal conclusions, including its interpretation of the Internal Revenue Code and Treasury Regulations, de novo. *Metro Leasing & Dev. Corp. v. Comm'r*, 376 F.3d 1015, 1021 (9th Cir.2004) (citing *Boeing Co. v. United States*, 258 F.3d 958, 962 (9th Cir.2001)). *Estate of Saunders v. C.I.R.*, 745 F.3d 953, 957 (9th Cir. 3-12-2014).

**Issue 1 Argument:**

The central issue associated with the CIR's violation of Banister's right to be secure in his papers, personal effects, and privacy centers on the CIR's seizure of Banister's personal and business banking records. Those banking records were obtained by various CIR employees to fabricate and then tabulate their findings in a Form 4549-A examination report, which has been deemed invalid in Revenue Ruling 2005-59 ("Rev. Rul. 2005-59") by the IRS Office of Associate Chief Counsel since September 12, 2005. Banister attempted to bring to the tax court's attention via his Motion or An Offer Of Proof the fact that the IRS's own internal counsel deemed the very form used to tabulate the CIR's findings as underlined invalid. *See* EOR Vol. 2 C, pp. 12-15. However, the tax court refused to meaningfully review and address the Revenue Ruling 2005-59 matter by perfunctorily denying Banister's motion, let alone grant a hearing on the matter and thus the tax court erred in not allowing Banister meaningful review of the matter. This Court should find that the tax court erred, and rule the tax court error as effectively fatal to its decision.

In turn, the CIR used Banister's bank deposit records to propose a deficiency (an unpaid income tax liability) in the NOD, under a heading in the Table given simply "**Deficiency**". However, the Table's headings failed to specify a section in the IRC that either established or created Banister's legal liability for the asserted underlying dollar figures in the first place. Nonetheless, the CIR appeared to have

16

no difficulty citing to the particular sections of the IRC associated with the penalty provisions.

In Banister's Motion for an Offer of Proof, *See* EOR Vol. 2 C Motion For An Offer of Proof, p.5, the heading, "WITHHOLDING AND REPORTING PROVISIONS" appears. The reason Banister provided this section in his motion was to alert the court to the withholding and reporting requirements in the law. Why would the withholding and reporting requirements in the law be relevant to the dispute between Banister and the CIR? Because the withholding and reporting requirements in the law shed light on what duty, if any, Banister had under the law to report to the CIR the funds he deposited into the bank. Banister's duties under the law to report, if any, are intrinsically woven into the CIR's allegations against Banister yet the tax court refused to give Banister's analysis of these provisions the due consideration it deserved.

The efficacy of and the connection between the withholding laws and reporting laws was not established by Banister but by statutes promulgated by Congress in chapter 3 (withholding provisions) and chapter 61 (reporting provisions) of the IRC and by the Treasury Department in Treasury Decision 8734, as will be further discussed below with excerpts from the Federal Register.

> And so Congress has legislated in this instance, as in modern regulatory enactments it so often does, by conferring the rule-making power upon the agency created for carrying out its policy. See § 516(b), 52 Stat. 72, 77, 7 U.S.C. § 1516 (b). Just as everyone is charged with knowledge of the United States Statutes at Large,

17

Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents. 49 Stat. 502, 44 U.S.C. § 307. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-385 (1947).

First, with regard to the withholding provisions prong, the CIR has asserted that Banister "…**received** unreported taxable income from his business activities…" (emphasis added). In order for Banister to have received this alleged unreported taxable income, someone (a payer) would have had to pay Banister such funds in the first place. For purposes of U.S. individual income tax such a person may very well have had a requirement to ***withhold*** certain amounts of income tax and ***report*** the payment amounts Banister received to the CIR.

Analyzing the objective standards governing the withholding requirements under the law with respect to the payers who actually made payments to Banister actually sheds light on the information reporting provisions under chapter 61 of the IRC. In any event, the issue Banister appeals to this Court is that Banister attempted via his Motion or An Offer Of Proof to bring the analysis of these withholding laws to the attention of the tax court but the tax court perfunctorily denied the motion without any meaningful review of the facts and analysis contained in the motion, let alone grant a hearing on the matter and thus the tax court erred in not addressing the facts and law. This Court should find that the tax court erred, and rule the tax court error as effectively fatal to its decision.

Second, with regard to why the reporting provisions prong is relevant to this dispute, the CIR has asserted that Banister "…failed to file an income tax return since 1998…" and Banister "…received **unreported** taxable income from his business activities…". (emphasis added) *See* EOR Vol. 2 E, pp. 9-10, ¶¶ ee, gg. These assertions coupled with asserting alleged penalties in the NOD leaves no doubt that the CIR's position is that Banister had a duty under the law to report the amounts derived from IRS Examiner Dale Fournier's bank deposit analysis but failed to do so.

In the record of this case, this Court should find that neither IRS Revenue Agent Fournier nor the agency at large established the necessary material facts, regulatory procedures, or statutory authority to determine whether Banister's alleged "*unreported*" taxable income was, in fact, subject to either the chapter 3 "**withholding provisions**" or the chapter 61 "**information reporting**" provisions in the IRC. The absence of analysis concerning these provisions is problematic, as there are no facts in the record indicating that any of the deposits summarized from the seized bank records were subject to the ***federal income tax withholding*** provisions under chapter 3 of the Code or the ***information reporting provisions*** under chapter 61 of the Code.

### The Withholding Provisions

Admittedly, subtitle A (income tax) of the IRC does take up roughly half of the physical page count of the IRC. However, the *withholding provisions* in subtitle

19

A fall within just one chapter (chapter 3), embracing just four sections within that chapter, namely §§ 1441, 1442, 1443 and 1461.

Note the "title-wide" definition of a "**withholding agent**" at 26 U.S.C. § 7701(a)(16) as follows:

> **26 U.S.C. § 7701 Definitions**
> (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof — (16) Withholding agent — The term "withholding agent" means any person required to deduct and withhold any tax under the provisions of section 1441, 1442, 1443, or 1461.

Notice that the "title-wide" definition references the pertinent sections shared above. A review of the IRC reveals that there are no other definitions of a "withholding agent" "distinctly expressed or manifestly incompatible" with the "title-wide" definition.

Under the "Standard of Review" relied upon here, the definition of "withholding agent" leaves little room for CIR interpretation. In fact, the wording is so plain, it even provides the specific sections of federal law in chapter 3 to apply to one's personal facts and circumstances.

With regard to Banister's personal facts and circumstances, he did provide the tax court with his specific facts and circumstances in his Offer of Proof, see EOR Vol. 2 C, p. 3, last para., as follows:

> To fully appreciate respondent's failure to adhere to the intent of the lawmaker, the Fact-Finder must recognize that respondent failed to specify petitioner's facts and circumstances. To be clear, the petitioner: (1) is a citizen of the United States; (2) is domiciled in the United

States; (3) performed all of his services within the United States; and (4) all of petitioner's income was U. S. sourced.

At this point, it is only fair to cite and quote the four "subtitle A" sections as follows:

### 26 U.S.C. § 1441. Withholding of tax on nonresident aliens

(a) General rule — Except as otherwise provided in subsection (c), all persons, in whatever capacity acting (including lessees or mortgagors of real or personal property, fiduciaries, employers, and all officers and employees of the United States) having the control, receipt, custody, disposal, or payment of any of the items of income specified in subsection (b) (to the extent that any of such items constitutes gross income from sources within the United States), of any nonresident alien individual or of any foreign partnership shall (except as otherwise provided in regulations prescribed by the Secretary under section 874) deduct and withhold from such items a tax equal to 30 percent thereof, except that in the case of any item of income specified in the second sentence of subsection (b), the tax shall be equal to 14 percent of such item.

Applying Banister's uncontested facts and circumstances to section 1441, this Court should find that Banister's income was indeed U.S. sourced, but Banister's payee status is not that of a nonresident alien individual. Section 1441 was not intended to bring Banister within the scope of that section of federal law. Moreover, the CIR has not ever alleged Banister to be a nonresident alien individual. Let us turn our attention to the next section.

### 26 U.S.C. § 1442. Withholding of tax on foreign corporations

(a) General rule — In the case of foreign corporations subject to taxation under this subtitle, there shall be deducted and withheld at the source in the same manner and on the same items of income as is provided in section 1441 a tax equal to 30 percent thereof. For purposes of the preceding sentence, the references in section 1441(b)

21

to sections 871(a)(1)(C) and (D) shall be treated as referring to sections 881(a)(3) and (4), the reference in section 1441(c)(1) to section 871(b)(2) shall be treated as referring to section 842 or section 882(a)(2), as the case may be, the reference in section 1441(c)(5) to section 871(a)(1)(D) shall be treated as referring to section 881(a)(4), the reference in section 1441(c)(8) to section 871(a)(1)(C) shall be treated as referring to section 881(a)(3), the references in section 1441(c)(9) to sections 871(h) and 871(h)(3) or (4) shall be treated as referring to sections 881(c) and 881(c)(3) or (4), the reference in section 1441(c)(10) to section 871(i)(2) shall be treated as referring to section 881(d), and the references in section 1441(c)(12) to sections 871(a) and 871(k) shall be treated as referring to sections 881(a) and 881(e) (except that for purposes of applying subparagraph (A) of section 1441(c)(12), as so modified, clause (ii) of section 881(e)(1)(B) shall not apply to any dividend unless the regulated investment company knows that such dividend is a dividend referred to in such clause).

Applying Banister's uncontested facts and circumstances to section 1442, this Court should find that Banister's income was indeed U.S. sourced, but Banister's payee status is not that of a foreign corporation. Section 1442 was not intended to bring Banister within the scope of that section of federal law. Moreover, the CIR has not ever alleged Banister to be a foreign corporation or that his income were gains, profits, and other income from a foreign corporation. Let us turn our attention to the third section.

### 26 U.S.C. § 1443. Foreign tax-exempt organizations

(a) Income subject to section 511 — In the case of income of a foreign organization subject to the tax imposed by section 511, this chapter shall apply to income includible under section 512 in computing its unrelated business taxable income, but only to the extent and subject to such conditions as may be provided under regulations prescribed by the Secretary.

Applying Banister's uncontested facts and circumstances to section 1443, this Court should find that Banister's income was indeed U.S. sourced, but Banister's payee status is not that of a foreign tax-exempt organization. Moreover, the CIR has not ever alleged Banister to be a foreign tax-exempt organization or that his income were gains, profits, and other income from a foreign tax-exempt organization. Section 1443 was not intended to bring Banister within the scope of that section of federal law. Let us turn our attention to the fourth and final section.

## 26 U.S.C. § 1461. Liability for withheld tax

Every person required to deduct and withhold any tax under this chapter is hereby made liable for such tax and is hereby indemnified against the claims and demands of any person for the amount of any payments made in accordance with the provisions of this chapter.

Applying Banister's uncontested facts and circumstances to the objective standards in section 1461, this Court should find that Banister was a payee. As a payee, Banister was not a person required to deduct and withhold any federal income tax in accordance with the provisions of chapter 3 of the Code. Moreover, the CIR has not ever alleged Banister to be a person described in 26 U.S.C. § 1461 nor any other section of the Code for that matter.

Based on the sections contained in the Title-wide definition of a withholding agent, which has its historical origin in the 1918 Revenue Act, *see* 40 Stat. 1057, ch. 18, §§ 221 and 237 (limited to nonresident aliens and foreign corporations). *See also* Art. 315 of Regulations 45 that implemented the provisions of the Revenue Act of

23

1918, stating that withholding on all nonresident alien employees was required. The current provisions are in absolute harmony with the historical provisions *in pari materia*.

After the repeal of the 1913 Tariff Act, *see* 1916 Revenue Act, § 24 (39 Stat. at 776), facts and circumstances similar to Banister's were never again contemplated by Congress to be subjected to any federal income tax withholding and information reporting scheme. Notwithstanding the tax court's alleged jurisdictional irregularities combined with the CIR's factual and legal defects, the allegations that Banister failed in his duty to report information and the horrendous penalties attributed thereto require a review and analysis of the ***information reporting requirements*** under chapter 61 of the Code. Again, the issue Banister appeals to this Court is that Banister attempted via his Motion or An Offer Of Proof to bring the analysis of these withholding laws to the attention of the tax court but the tax court perfunctorily denied the motion without any meaningful review of the facts and analysis contained in the motion, let alone grant a hearing on the matter and thus the tax court erred in not addressing the facts and law. This Court should find that the tax court erred, and rule the tax court error as effectively fatal to its decision.

Note that the CIR failed to fully develop the facts as to whether the deposits reflected in the seized bank deposit records belonging to Banister were actually ***reportable to the CIR by any person*** *(see IRC § 1461 and its regulations)* In effect,

24

the CIR simply self-servingly declared that what Banister received was "unreported" (*see* EOR Vol. 2 E, p. 10, ¶ gg) without having either the material facts admitted into the record or specifying the particular requirement in the law causing the deposited payments made to Banister to be reported to the CIR. On this point, the CIR waived the issue during the span of the trial.

Perhaps in its response brief the CIR will assert for the first time and attempt to show that Banister's "*unreported*" bank deposits were actually **reportable**. Further, perhaps the CIR's brief will include a specific provision allowing the CIR to put his finger on law requiring the deposited payments to be reported to the CIR rather than just the CIR's *ipse dixit* declaration. Meanwhile, Banister not only denied this allegation (*see* EOR Vol. 2 D, p. 14, ¶ gg) but he also motioned the court via his offer of proof for an opportunity to prove the law imposed no such reporting duty on him. *See* EOR Vol. 2 C generally, but also specifically at pp.7-12. Again, the tax court refused to meaningfully review and address Banister's motion containing the analysis of reporting requirements and perfunctorily denied the motion. This Court should find that the tax court erred by denying Banister's motion without due consideration of the facts and conclusions of law. Upon such a finding, this Court should rule the tax court error as effectively fatal to its decision.

### The Information Reporting Provisions

A review of the information reporting provisions is appropriate at this point.

In 2014 The Secretary published Treasury Decision 9658 (TD 9658) in the Federal

Register. TD 9658 explained to its readers as follows:

> On October 14, 1997, the IRS and the Treasury Department published final and temporary regulations (TD 8734) in the Federal Register (62 FR 53387) dealing with the withholding of tax under sections 1441, 1442, and 1443 (contained in **chapter 3** of Subtitle A of the Code) on certain U.S. source income paid to foreign persons, the related tax deposit and reporting requirements under section 1461, and the statutory exemptions for portfolio interest under sections 871(h) and 881(c) (1997 final regulations). In addition, the 1997 final regulations finalized changes that were included in proposed regulations applicable to the reporting provisions of sections 6041, 6042, 6044, 6045, and 6049 under **chapter 61** of the Code. On May 22, 2000, the IRS and the Treasury Department published final regulations (TD 8881) in the Federal Register (65 FR 32152) amending certain provisions of the 1997 final regulations under sections 1441, 1442, 1443, 6041, 6041A, 6042, 6045, and 6049 (collectively the final regulations under chapters 3 and 61 are referred to herein as the final regulations). (emphasis added)

Collectively referred to as the "final regulations" under chapters 3 and 61 of

the IRC, this Court will recall that the four sections Banister presented above are

found under chapter 3 of the IRC. Further this Court will recall that "chapter 61"

contains the information reporting provisions under chapter 61 of the IRC.

Banister invites this Court to direct its attention towards the "final

regulations" as found in Treasury Decision 8734 ("TD 8734") published in the

Federal Register (62 FR 53387) dealing with the withholding of tax under sections

26

1441, 1442, and 1443 (contained in **chapter 3** of Subtitle A of the IRC) and the information reporting provisions (found in **chapter 61** of Subtitle F of the IRC).

As a point of reference, sections 1441, 1442, 1443, and 1461 were discussed above and not any of the four sections embrace Banister's facts and circumstances. TD 8734 confirms that Banister's U.S. sourced income is not subject to withholding under chapter 3 as follows:

> "As a general matter, a withholding agent (whether U.S. or foreign) must ascertain whether the payee is a U.S. or a foreign person. If the payee is a U.S. person, the withholding provisions under chapter 3 of the Code do not apply***"

In perfect harmony with the Title-wide definition of a withholding agent, *see* 26 U.S.C. 7701(a)(16), TD 8734 explains that a payee who (like Banister) is a U.S. person is not subject to any of the withholding provisions under chapter 3 of the IRC (recalling that chapter 3 of the IRC is where withholding agent's are sent (via section 7701(a)(16) mentioned above) to apply the intent of Congress regarding the authority to perform withholding. However, this portion of the argument addresses the ***information reporting provisions*** under chapter 61 of the Code. Following the portion of TD 8734 quoted by Banister above, this Court will find as follows:

> "***however, information reporting under chapter 61 of the Code may apply; further, if a TIN is not furnished in the manner required under section 3406, backup withholding may also apply."

27

This portion of TD 8734's explanation informs the reader that information reporting ***may*** apply. This is the entry point of the "presumption rules" (*see* EOR Vol. 2 C generally, but also specifically beginning at p. 10), which operate to allow information returns to be submitted to the CIR even though the U.S. payee is excused (exempt) from withholding of any federal income tax. Please keep in mind, no withholding agent had the authority nor exercised the authority under any IRC provisions to withhold any tax from payments made to Banister.

The only possible way Banister could have been subject to the information reporting provisions under chapter 61 of the IRC is in an instance where the withholding agent (not the IRS) is unable to verify Banister's "payee status" as a payee who is a U.S. person. Since Banister was once a part of CIR's agency and could only have served in that capacity if he was a "U.S. person", the CIR will be hard pressed to claim ignorance of the fact that Banister's payee status was anything other than a payee who is a U.S. person -- a citizen of the United States. Nonetheless, Banister's payors as well as the CIR had actual knowledge and/or reliable documentation of Banister's payee status.

TD 8734 adds, "If the payee is a foreign person, however, the withholding provisions under chapter 3 of the Code apply instead." *See* EOR Vol. 2 C generally, but also specifically beginning at p. 6. A glance back to the definition of the withholding agent resolves any question as to the general

application of the withholding provisions under chapter 3 of subtitle A of the IRC to both a "U.S. person" payee and a "foreign person" payee.

However, the most important element of this discussion appears in TD 8734 as follows:

> To the extent withholding is required under chapter 3 of the Code, or is excused based on documentation that must be provided, none of the information reporting provisions under chapter 61 of the Code apply, nor do the provisions under section 3406.

Since Banister's payee status is well-documented, he was excused (exempt) from the withholding provisions under chapter 3 of the Code. This being true, and irrefutable -- ***none of the information reporting provisions under chapter 61 of the Code apply***, nor do the provisions under section 3406. The only way Banister could have been subject to the federal income tax, would be if and only if he was either a payee who is a ***foreign person***, or ***a U.S. payee presumed (guided by the presumption rules) to be a foreign person***.

Undoubtedly, the tax court's fatal errors were due to it ignoring Banister's repeated efforts to have it correct the egregious errors caused by the CIR's intentional failure to follow his own rules. The record shows that Banister provided his ***exemption*** from withholding and reporting in both Banister's motion to the tax court to void its judgment for lack of subject matter jurisdiction and Banister's motion for an offer of proof. Banister has provided both of those motions in the Excerpts of the Record, *see* EOR Vol. 2 B and Vol. 2 C, respectively. In the interest

29

of due process of law, Banister requests complete review of those two pleadings as well as addressing the tax court's failure to do the same.

To summarize the importance of the rules, TD 8734 explains -- the withholding agent (not the IRS) must ascertain whether a payee, Banister in this case, is either a payee who is a U.S. or payee who is a foreign person. See 26 C.F.R. § 1.1441-1(b)(2)(i) as follows:

> **26 C.F.R. § 1.1441-1(b)(2) Determination of payee and payee's status—**
> (i) *In general.* Except as otherwise provided in this paragraph (b)(2) and §1.1441-5(c)(1) and (e)(3), a payee is the person to whom a payment is made, regardless of whether such person is the beneficial owner of the amount (as defined in paragraph (c)(6) of this section). A foreign payee is a payee who is a foreign person. A U.S. payee is a payee who is a U.S. person.

T.D. 8734 adds -- if the payee is a U.S. person, the withholding provisions under chapter 3 of the Code do not apply; however, information reporting under chapter 61 of the Code *may* apply. The information reporting provisions under chapter 61 of the Code do not apply to Banister -- because Banister provided reliable documentation to his payors, establishing the fact that he is a payee who is a U.S. person. Thus the payments Banister received during the Relevant Years were not reportable to the CIR.

Neither the tax court nor the CIR made any effort to discuss Banister's payee status, nor the inescapable conclusion that someone about whom no information reporting is required is someone whom the CIR has no business contacting or harassing, let alone seizing their bank records. The tax court erred by failing to

30

follow the simple instructions giving legal notice of the federal laws that Banister, the tax court, and the CIR are required to dutifully obey. "The Treasury Regulations are binding on the Government as well as on the taxpayer: 'Tax officials and taxpayers alike are under the law, not above it.'" *Pacific National Bank of Seattle v. Commissioner*, 9 Cir. 1937, 91 F.2d 103, 105. *Brafman v. United States*, 384 F.2d 863, 866 (5th Cir. 1967).

### Applying TD 8734 to the Table shown in the Notice of Deficiency:

Because Banister's payments were neither subject to withholding nor information reporting, this Court is invited to view the CIR's Table in a refreshing source of light. For instance, the Table seemed to be used to validate the asserted dollar amounts located under the statutory authority shown across the headings to the Table. Why else would three of the four dollar amount columns contain IRC statutory references yet the most foundational "Deficiency" column contain no such statutory reference? *See* EOR Vol. 2 F, p. 14.

Banister believes that there is one particular point that needs to be emphasized. Please notice that all the headings citing to certain sections of the Code reflect penalty amounts associated with Banister's purported failure to pay the tax (section 6651(a)(1); Banister's purported act of fraudulently failing to file a tax return (section 6651(f)); and, Banister's purported failure to make timely estimated federal income tax payments (section 6654).

31

At page 9 of Banister's motion to dismiss for lack of jurisdiction, *see* EOR Vol. II B, he provided thee "exception" to the failure to pay any estimated tax. See 26 U.S.C. § 6654(e)(2) as follows:

Petitioner provides herein 26 U.S.C. § 6654(e)(2), quoted in pertinent part as follows:

> (e) Exceptions
> (2) Where no tax liability for preceding taxable year
> No addition to tax shall be imposed under subsection (a) for any taxable year if—
>  (A) the preceding taxable year was a taxable year of 12 months,
>  (B) the individual did not have any liability for tax for the preceding taxable year, and
>  (C) the individual was a citizen or resident of the United States throughout the preceding taxable year.

Although the three exceptions are self-evident, Banister's preceding year (and every year) was a period of 12 calendar months; next, the CIR has not shown nor established a "liability provision" for any year, much less any previous calendar year; and, of course, Banister is a payee who is a U.S. person. *See* 26 U.S.C. 7701(a)(30)(A).

See also EOR Vol. II at pp. 10-11, where Banister showed the tax court the procedural guidelines as regards the CIR's burden of production in any court proceeding to prove that there was a liability. *See* IRM 4.8.16.2.5.1(3). The CIR made no effort to quote an applicable liability provision, much less show that the payments Banister received during the Relevant Years was even reportable. Banister's. The tax court erred in allowing the CIR to skate past the rules regarding

the CIR's burden to prove that Banister actually had a liability. As was said more than a century ago. "If it is law, it will be found in our books; if it is not to be found there, it is not law." *Boyd v. United States*, 116 U.S. 616, 627 (1886).

### The CIR's Incorrect and Arbitrarily Derived Notice of Deficiency

Determinations made by the Commissioner in a notice of deficiency normally are presumed to be correct, and the taxpayer bears the burden of proving that those determinations are erroneous. *See INDOPCO Inc. v. Commissioner*, 503 U.S. 79 (1992); *Edelson v. Commissioner*, 829 F.2d 828, 831 (9th Cir. 1987). The presumption of correctness will be rebutted if the taxpayer proves by a preponderance of the evidence that the deficiency is incorrect or was arbitrarily derived. *See In re MacFarlane*, 83 F.3d 1041, 1044 (9th Cir. 1996), *cert. denied*, 520 U.S. 1115 (1997); *Herbert v. Commissioner*, 377 F.2d 65 (9th Cir. 1966). *Merkel v. C.I.R.*, 192 F.3d 844, 852 (9th Cir. 1999).

Very few people, if any, would ever attempt to argue that the CIR does not know how to cite to the important sections of the Code when such a need arises. However, there must be one section of federal law that must be cited in order to justify the dollar figures in the "penalty portion" of the Table in the NOD associated with this case (*see* EOR Vol. 2 F, p. 14). So, the question is, why did the CIR use the term **"Deficiency"** in the heading rather than a specific section of federal law as it did with the penalty provisions? Banister attempted to provide the tax court with these relevant clues appearing right on the face of the NOD his Motion To Dismiss (*see* EOR Vol. 2 B generally but also specifically at p. 4 top paragraph and p. 5 bottom paragraph) but, again, the tax court refused to meaningfully review and address Banister's motion and perfunctorily and wrongly

33

denied it without so much as a hearing. Thus, the tax court erred in not allowing Banister meaningful review of the matter. This Court should find that the tax court erred, and rule the tax court error as effectively fatal to its decision.

To begin to answer the question, in a tax evasion case, one of the elements of the offense is the existence of a deficiency. "One element of tax evasion under 26 U. S. C. § 7201 is 'the existence of a tax deficiency.'" *Sansone* v. *United States*, 380 U. S. 343, 351; *Boulware v. U.S.*, 06-1509 (U.S. 3-3-2008).

It seems prudent and practical for this Court to hold that there must be a liability for a particular tax due and owing in order for the CIR to claim there is a deficiency in said tax. For example, in *Boulware v. U.S.*, 06-1509, *2 (U.S. 3-3-2008), the Supreme Court stated, "Any deficiency determination in this case will turn on §§ 301 and 316(a) of the Code."

In effect, the Supreme Court was saying, 'Any deficiency determination in this case will turn on §§ 301 and 316(a) of the Code' underscores the CIR's inability to admit that its deficiency determination in this case would have to turn on a specific section of the IRC.

Turning back to TD 8734, the Secretary informs the public that a payee who is a U.S. person (with reliable documentation) is neither subject to withholding under chapter 3 of the Code nor the information reporting provisions under chapter 61 of the Code. Placing Banister's facts and circumstance alongside a plain reading of TD 8734, Banister was not liable for any tax during the disputed years.

34

Banister maintains that in order to have a deficiency, there must first be a liability established by law. Since this case involves subtitle A income tax, then the law would be expected to come from some statute in subtitle A of the IRC. In effect, the CIR's inability to cite to a liability provision is effectively admitting that it is unable to cite to a section of the IRC making Banister liable for tax. Banister did not owe a penny in federal taxes. The Supreme Court observed:

> Judge Thomas concurred because the panel was bound by *Miller*, but noted that "*Miller* — and now the majority opinion — hold that a defendant may be criminally sanctioned for tax evasion without owing a penny in taxes to the government." 470 F. 3d, at 938. That, he said, not only "indicate[s] a logical fallacy, but is in flat contradiction with the tax evasion statute's requirement . . . of a tax deficiency." *Ibid.* (internal quotation marks omitted). *Boulware v. U.S.*, 06-1509, *5 (U.S. 3-3-2008).

Thus, the CIR was compelled by due process of law to make its table show a column of zeros under the "Deficiency" heading, as well as a column of zeros under each successive heading, too.

> We now return to the ground upon which we decide: no regulation. The government quotes: "Men must turn square corners when they deal with the Government." Sure, but if the government hides the corners, what should men then do? *Farley v. United States*, 252 F.2d 85, 92 (9th Cir. 1958).

How could the CIR justify a penalty amount when there is no underlying liability amount? Banister believes that he has met the "preponderance" test by showing this Court the logical fallacy of the tax gatherer putting his finger on Banister but not putting his finger on the law permitting it.

*See Leavell* v. *Blades*, 237 Mo. 695, 700-701, 141 S.W. 893, 894 (1911) ("When the tax gatherer puts his finger on the citizen, he must also put his finger on the law permitting it"). Thomas, J., concurring opinion, *United Dominion Industries v. United States*, 532 U.S. 822, 839 (2001).

*See* also Judge Noonan's Dissent

> *A basic rule.* Second, a very old canon of construction applies in this case, "in which the complex statutory and regulatory scheme leads itself to any number of interpretations." We resolve the inconsistencies against the government. *United Dominion Industries, Inc. v. United States*, 532 U.S. 822, 839, 121 S.Ct. 1934, 150 L.Ed.2d 45 (2001) (Thomas, J., concurring and citing, among other cases, *United States v. Merriam*, 263 U.S. 179, 188, 44 S.Ct. 69, 68 L.Ed. 240 (1923) ("If the words are doubtful, the doubt must be resolved against the Government and in favor of the taxpayer")). This canon of construction is framed in the cases just cited as particularly relevant to tax statutes. It is, however, not a concession to taxpayers. It is the way legal documents are read. The draft is construed against the drafter. Judge Noonan's Dissent, *XILINX, Inc*. v. *C.I.R.*, 567 F.3d 482, 498 (9th Cir. 2009).

## 26 U.S.C. § 6651(f) and CIR's Burden:

At the tax court trial the CIR insisted that Banister was required to file IRS Forms 1040 ("U.S. Individual Income Tax Return") claiming he "fraudulently" failed to file those returns for the 2003-2006 calendar years inclusive. As for burden, the tax court precedent states:

> Respondent bears some degree of burden concerning each issue in these cases. With respect to petitioner's unreported income, respondent has the burden to provide some predicate evidence connecting petitioner to the charged activity. *See*, e.g., *De Cavalcante v. Commissioner*, 620 F.2d 23 (3d Cir. 1980), *aff'g* T.C. Memo. 1978-432. With respect to the additions to tax, respondent bears the burden

of production. See sec. 7491(c). With respect to fraud penalties under section 6663, respondent bears the burden of proof by clear and convincing evidence. See sec. 7454(a); Rule 142(b); *Reedy*, T.C. Memo. 2008-100 (same burden for additions to tax under section 6651(f)). *Tucker*, T.C. Memo. 2014-51, *12 (T.C. 3-27-2014).

In the same vein as TD 8734, how could Banister not have any requirement to subject the payments he received to withholding under chapter 3 of the Code, nor the information reporting provisions under chapter 61 of the Code, yet still be considered liable for a fraudulent failure to file penalty, which begins and ends with a filing requirement associated with a U.S. Individual Income Tax Return?

The CIR must first have to show evidence that Banister had an obligation to file U.S. Individual Income Tax Returns for each calendar year 2003 through 2006 inclusive, as reflected on the CIR's invalid/dummy forms that were included with the CIR's fatally flawed Notice of Deficiency.

Regarding the requirement to file a U.S. Individual Income Tax Return, Banister believes the most telling requirement to file a U.S. Individual Income Tax Return is found in the Treasury Regulations that Congress gave the Secretary of the Treasury the authority to prescribe on the topic.

Banister has learned the truth -- that as a payee who is a U.S. person domiciled within the USA and performing all of his services within the USA, he was not "required by law" to make or file a U.S. Individual Income Tax Return. Employees of the government, with no firsthand knowledge of Banister's payee status, have ignored petitioner's reliance on the law and relevant case precedent.

37

Individual Federal income tax returns are generally due on or before April 15 of the year following the close of the calendar year. See sec. 6072(a). However, there are exceptions to this general rule, including an exception for U.S. citizens whose tax homes are outside the United States and Puerto Rico. See sec. 1.6081-5(a)(5), Income Tax Regs. An extension to file returns of citizens in foreign countries (up until the 15th day of the 6th month following close of the taxable year — June 15 in this case) will be granted for those U.S. citizens who have properly requested one. See sec. 1.6081-5(a), Income Tax Regs. To obtain an extension under section 1.6081-5, Income Tax Regs., taxpayers must attach a statement to their return showing eligibility for the extension. See sec. 1.6801-5(b), Income Tax Regs. *Pekar v. CIR*, 113 T.C. 158, 167 (1999).

As Banister understands the case, in *Pekar*, *id*, the tax court found that Mr. *Pekar* was a U.S. citizen residing abroad. *See Pekar, id*, at 158, "P, a **U.S. citizen**, **resided** in Germany and the United Kingdom during his 1995 tax year." [Emphasis added]. Banister believes the CIR and the tax court must take notice of the tax court's holding in the *Pekar* case and the legislative regulations both the CIR and the tax court were required to follow, both of which Banister provided in his motion for an offer of proof (*see* EOR Vol. 2 C generally and p. 17 specifically). "The IRS must follow the procedures set forth in its own regulations." *See Vitarelli v. Seaton*, 359 U.S. 535, 540, 79 S.Ct. 968 (1959) ("the Secretary . . . was bound by the regulations he himself promulgated."); and *Caldwell v. Miller*, 790 F.2d 589, 609 (7th Cir. 1986)("An agency must conform its actions to the procedure that it has adopted.").

The record indicates that Banister did not file an IRS Form 1040 during the 2003-2006 calendar years associated with this case, nor did he file with the CIR an

*extension of time to file* and, given his U.S. domicile and status as a U.S. person, there was very good reason for him not to do so (as discussed below). This Court should also find that Banister was neither subject to the withholding provisions under chapter 3 of the Code nor the information reporting provisions under chapter 61 of the Code. So, the question for the Court is whether Banister was actually required to file a U.S. Individual Income Tax Return in the first place? Banister's position requires the Court to turn to the applicable legislative regulations. Banister invites the Court to notice that 26 C.F.R. § 1.6081-4 states:

> (a) In general--(1) Period of extension. An individual who is required to file an individual income tax return will be allowed an automatic 4-month extension of time to file the return after the date prescribed for filing the return provided the requirements contained in paragraphs (a)(2), (3), and (4) of this section are met. In the case of an individual described in Sec. 1.6081-5(a)(5) or (6), the automatic 4-month extension will run concurrently with the extension of time to file granted pursuant to Sec. 1.6081-5.

As written, the Secretary makes very clear, "An individual who is required to file an individual income tax return will be allowed an automatic 4-month extension of time to file the return." It's very doubtful that the CIR will argue an extension of time is inapplicable to his burden to prove that Banister was "required to file" and that Banister not only failed to file the required return, but also fraudulently failed to file the U.S. Individual Income Tax Return has alleged that Banister was required to file for each calendar year. In fact, the CIR may well argue

that Banister did not make a request for an extension of time to file a U.S. Individual Income Tax Return.

The key to Banister's decision not to request an extension of time to file is two-fold. First, Banister invite's the Court's attention to 26 C.F.R. § 1.6081-5 Extensions of time in the case of certain partnerships, corporations and U.S. citizens and residents. *See* EOR Vol. 2 C p. 19.

(a) The rules in paragraphs (a) through (e) of this section apply to returns of income due after April 15, 1988. An extension of time for filing returns of income and for paying any tax shown on the return is hereby granted to and including the fifteenth day of the sixth month following the close of the taxable year in the case of:

(1) Partnerships which are required under Sec. 1.6031-1(e)(2) to file returns on the fifteenth day of the fourth month following the close of the taxable year of the partnership, and which keep their records and books of account outside the United States and Puerto Rico;

(2) Domestic corporations which transact their business and keep their records and books of account outside the United States and Puerto Rico;

(3) Foreign corporations which maintain an office or place of business within the United States;

(4) Domestic corporations whose principal income is from sources within the possessions of the United States;

(5) United States citizens or residents whose tax homes and abodes, in a real and substantial sense, are outside the United States and Puerto Rico; and

(6) United States citizens and residents in military or naval service on duty, including non-permanent or short term duty, outside the United States and Puerto Rico.

Reading down the list of taxpayers (U.S. persons and foreign persons) required to file and are granted the extension of time to file, Banister believes that this Court will be unable to find a taxpayer "fitting" Banister's specific facts and

40

circumstances. To be sure, Banister disputes the CIR's fact-free assumption that Banister "resided" in Nevada. No matter how the Court rules on the dispute regarding whether Banister was ***domiciled*** in Nevada or ***resided*** in Nevada--the point will be, Banister certainly performed all of his services within the United States of America, where his home and abode, in a real and substantial sense, is, was and remains within the United States of America.

Of course, the CIR may concede the obvious fact that Banister is not required to file any U.S. Individual Income tax Returns for any of the at-issue years, and could not possibly owe any federal income taxes as a matter of law. Then again, the CIR may argue vigorously that the Secretary was remiss for making the regulations dealing with the filing requirements (and extensions) so uncomplicated. However, the most important facet of this requirement to file / extension of time issue comes in the form of 26 C.F.R. § 1.6081-5(b), which requires strict compliance with the following rule:

> (b)In order to qualify for the extension under this section, a statement must be attached to the return showing that the person for whom the return is made is a person described in paragraph (a) of this section.

The question is obvious, knowing Banister's facts and circumstance, could Banister qualify for an extension of time to file? Should Banister have attached a statement to a return certifying facts and circumstances that are not applicable to him? Banister believes that this Court would answer the question in the negative.

41

**CIR's Failure To Satisfy "Badges of Fraud" Criteria:**

> Determinations made by the Commissioner in a notice of deficiency normally are presumed to be correct, and the taxpayer bears the burden of proving that those determinations are erroneous. See INDOPCO Inc. v. Commissioner, 503 U.S. 79 (1992); Edelson v. Commissioner, 829 F.2d 828, 831 (9th Cir. 1987). The presumption of correctness will be rebutted if the taxpayer proves by a preponderance of the evidence that the deficiency is incorrect or was arbitrarily derived. See In re MacFarlane, 83 F.3d 1041, 1044 (9th Cir. 1996), cert. denied, 520 U.S. 1115 (1997); Herbert v. Commissioner, 377 F.2d 65 (9th Cir. 1966). *Merkel v. C.I.R.*, 192 F.3d 844, 852 (9th Cir. 1999).

In order for CIR to carry his burden regarding the 26 U.S.C. § 6551(f) fraudulent failure to file penalty, it must prove by clear and convincing evidence that at least some portion of Banister's alleged underpayment of tax is due to fraud. Fraud for that purpose is defined as *intentional wrongdoing, with the specific purpose of avoiding a tax believed to be owed*. *DiLeo*, 96 T.C. at 874. The Commissioner must thus prove that the taxpayer intended to evade tax believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of tax. *Id.* Fraud is never presumed and must be established by independent evidence of fraudulent intent. *Edelson v. Commissioner*, 829 F.2d 828, 833 (9th Cir. 1987), affg. T.C. Memo.1986-223. A fraudulent state of mind may be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. *Id. Gould*, 139 T.C. No. 17, 48-49 (T.C. 11-26-2012).

Before addressing whether the record contains any evidence that Banister intended to evade tax by not filing tax returns for 2003, 2004, 2005 and 2006, it is

appropriate to address whether or not the record indicates Banister believed a tax to be owing for the disputed years since the accuser must prove by clear and convincing evidence that Banister possessed the specific purpose of avoiding a tax *he believed* to be owed. For example, the CIR produced and successfully introduced into the record facts supporting the contention that Banister formulated a belief that he did not owe any federal income tax, and as early as 1999:

- Starting in 1993, petitioner worked for respondent as a Special Agent in respondent's Criminal Investigation Division.[1]

- Petitioner left his position with respondent in February of 1999.[2]

   In 1999, petitioner authored a book entitled "Investigating the Federal Income Tax: A     Preliminary Report." The parties have attached a copy of petitioner's book as Exhibit 8-J.[3]

- In his book titled "Investigating the Federal Income Tax: A Preliminary Report", *petitioner concluded that he and other citizens were not obligated to pay tax* for the following reasons…[4]

- "*After petitioner left his employment with respondent*, petitioner began providing tax consultation services, speaking at conventions throughout the country, operating websites, and selling books, CDs, and DVDs *relating his*

---

[1] EOR Vol. 2 G, Ex. 1, p. 6, ¶ 25.
[2] EOR Vol. 2 G, Ex. 1, p. 6, ¶ 26.
[3] EOR Vol. 2 G, Ex. 1, p. 6, ¶ 27.
[4] EOR Vol. 2 G, Ex. 1, p. 6, ¶ 28.

*views on income tax and the Internal Revenue Code.*"[5]

Not only did the CIR fail to prove that Banister *believed* he owed a tax (and, if anything, provided proof that Banister did not believe he owed an income tax, as discussed above), he further failed to prove Banister's conduct was indicative of intentional wrongdoing, with the specific purpose of avoiding the tax for years 2003, 2004, 2005 and 2006.

Interestingly, the middle of the disputed years in this case (2004 and 2005) coincide with Banister's criminal indictment and trial acquittal. So, in addition to the CIR's inability to satisfy the "badges of fraud" criteria (discussion below), it is of value to point out that Banister's personal and professional life was exhaustively scrutinized during a multi-year IRS criminal investigation that culminated in a November, 2004 indictment[6] charging Banister with "conspiracy to *defraud* the United States" and "willfully aiding and assisting the filing of false tax returns"[7], followed by a June, 2005 trial[8] and acquittal on all charges[9].

Curiously, at the tax court trial, the CIR was unable to provide *one single piece of evidence* from the extensive IRS criminal investigation that led to the criminal trial nor from the ensuing trial itself in support of any of the *badges of fraud* criteria. The only reasonable conclusion to be drawn from the inability of

---

[5] EOR Vol. 2 G, Ex. 1, p. 7, ¶ 29.
[6] EOR Vol. 2 G, Ex. 4, pp. 19-20.
[7] EOR Vol. 2 G, Ex. 4, pp. 19-20.
[8] EOR Vol. 2 G, Ex. 4, pp. 19-20.
[9] EOR Vol. 2 G, Ex. 4, pp. 19-20.

44

highly trained IRS criminal investigators to unearth any bad-faith conduct on Banister's part is because there was no such bad-faith conduct to unearth.

Moving to the other prong of the CIR's burden, namely, the requirement to provide *clear and convincing evidence* that Banister possessed the specific purpose of avoiding a tax for the years 2003 through 2006, and used conduct intended to conceal, mislead, or otherwise prevent the collection of tax in furtherance of that purpose, a discussion of the CIR's failure to even come close to overcoming this burden follows.

Courts have developed a nonexclusive list of factors that demonstrate fraudulent intent. Those factors, commonly referred to as "badges of fraud", include: (1) understating income; (2) maintaining inadequate records; (3) implausible or inconsistent explanations of behavior; (4) concealment of assets; (5) failing to cooperate with tax authorities; (6) engaging in illegal activities; (7) an intent to mislead; (8) lack of credibility of the taxpayer's testimony; (9) filing false documents; (10) failing to file tax returns; and, (11) dealing in cash. *Bradford v. Commissioner*, 796 F.2d 303, 307-308 (9th Cir. 1986), *aff'g* T.C. Memo. 1984-601; *Scott*, T.C. Memo. 2012-65. "Although no single factor is necessarily sufficient to establish fraud, a combination of factors is more likely to constitute persuasive evidence." *Scott*, T.C. Memo. 2012-65. The taxpayer's intelligence, education, and tax expertise are also relevant in determining fraudulent intent. *Id*. Gould, 139 T.C.

No. 17, 49 (T.C. 11-26-2012). The CIR's failure to satisfy the above-listed "badges of fraud" criteria is addressed individually below:

1. Understating income – The CIR not only failed to bring forth evidence that Banister understated income at any time in his life, the CIR failed to bring forth into the record any evidence that Banister understated income in connection with the years in controversy, let alone provide evidence that Banister engaged in intentional wrongdoing with the specific purpose of avoiding a tax *he believed* to be owing.

2. Maintaining inadequate records – the CIR not only failed to bring forth into the record evidence that Banister maintained inadequate records at any time in his life, the CIR failed to bring forth evidence that Banister maintained inadequate records in a manner indicating intentional wrongdoing with the specific purpose of avoiding a tax *he believed* to be owing in connection with the years in controversy.

3. Implausible or inconsistent explanations of behavior – As best appellant can recall and glean from the record, the record is devoid of Banister providing any explanations whatsoever to IRS personnel (or anyone else for that matter) regarding his conduct/behavior exhibited <u>in connection with the years in controversy</u>. Since the CIR failed to point to any particular instances where Banister offered implausible or inconsistent explanations of behavior <u>and further failed to show</u> that such explanations were made in a manner

46

indicative of intentional wrongdoing with the specific purpose of avoiding a tax *he believed* to be owing in connection with the years in controversy, the CIR could not and did not satisfy this criteria.

4. Concealment of assets – the CIR not only failed to bring forth evidence that Banister concealed assets at any time in his life, the CIR failed to bring forth evidence that Banister concealed assets in a manner indicative of intentional wrongdoing with the specific purpose of avoiding a tax Banister believed to be owed in connection with the years in controversy.

5. Failure to cooperate – Per the tax court, Banister "…failed to submit for examination complete books and accounts for the years under audit" and "…resisted IRS efforts to obtain bank records through the use of summonses." *See* EOR Vol. 1 C, p. 6, last paragraph. This "failure to cooperate" criteria should not be examined in a vacuum. Banister was not simply some poor citizen picked for routine audit who decided to give the IRS a "hard time" to achieve some benefit for himself. Banister spent over five years of distinguished service as one of the CIR's own criminal investigators but once he disclosed his investigative report to his IRS supervisors, voiced his concern that taxpayer rights were being violated, was encouraged to resign after his inquiries were rebuffed and did resign[10], it was the CIR who failed to cooperate in good faith with Banister even though it

---

[10] EOR Vol. 2 G, Ex. 6

was the CIR's duty to do so. The CIR's suspicious conduct influenced Banister's expectation as to what level of "cooperation", if any, was appropriate in view of his rights and duties under the law when dealing with bad-faith conduct on the part of an intimidating and powerful bureaucracy. In any event, the CIR failed to prove that whatever level of cooperation or lack thereof that Banister supplied was indicative of intentional wrongdoing, with the specific purpose of avoiding a tax believed to be owed. If anything, it was the CIR's failure to cooperate that should be questioned, especially since the CIR had a duty to speak.

Indeed, as Mr. Justice Brandeis declared, speaking for a unanimous court in the *Tod* case, *supra*, which involved a deportation: "Silence is often evidence of the most persuasive character." 263 U.S., at 153-154. And just last Term in *Hale, supra*, the Court recognized that "[f]ailure to contest an assertion . . . is considered evidence of acquiescence . . . if it would have been natural under the circumstances to object to the assertion in question." 422 U.S., at 176. *Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976).

Rather than engage in dialogue prior to Banister's IRS resignation or in response to Banister's personal participation in conjunction with other concerned citizens in numerous additional other post-resignation attempts[11], the CIR placed Banister under criminal investigation not long after he resigned from the IRS in 1999 and the IRS "Office of Professional Responsibility" issued a complaint against Banister on March 19, 2003. As

---

[11] EOR Vol. 2 G, Ex. 4, pp. 7-18.

mentioned elsewhere in this brief, the investigation culminated in a November, 2004 indictment and June, 2005 trial and acquittal. To say that the IRS initiated a "full court press" targeting Banister with the agency's vast resources would also be an understatement. To say the IRS and Department of Justice were upset and devastated by Banister's acquittal would be an understatement. To say that the IRS and Department of Justice wasted untold hundreds of thousands of dollars harassing and prosecuting Banister rather than simply answering his questions and reciprocating Banister's good faith would be an understatement. In any event, confronting his accusers and participating in the adversarial process is hardly grounds to support a claim that Banister's "failure to cooperate" rises to a level of conduct considered to be either unauthorized, impermissible or indicative of intentional wrongdoing. By the way, the fact may not be in the record but Banister successfully quashed at least a portion of the IRS summons in the Central District of California (Case 2:09-cv-00172-MMM-JWJ Document 25 Filed 01/26/10).

7. Engaging in illegal activities – the CIR not only failed to bring forth evidence that Banister engaged in any illegal activity at any time in his life, it failed to bring forth evidence that Banister engaged in illegal activities indicative of intentional wrongdoing in furtherance of the specific purpose of

avoiding a tax Banister believed to be owed in connection with the years in controversy.

6. An intent to mislead – the CIR not only failed to bring forth any evidence that Banister possessed an intent to mislead at any time in his life, the CIR failed to bring forth "clear and convincing" evidence that Banister possessed an intent to mislead in furtherance of the specific purpose of avoiding a tax Banister believed to be owed in connection with the years in controversy.

7. Lack of credibility of the taxpayer's testimony – the CIR not only failed to bring forth evidence that Banister provided testimony lacking in credibility at any time in his life, it also failed to bring forth "clear and convincing" evidence that Banister provided testimony lacking in credibility indicative of intentional wrongdoing in furtherance of the specific purpose of avoiding a tax Banister believed to be owed in connection with the years in controversy.

8. Filing false documents – The CIR not only failed to bring forth evidence that Banister filed any false documents at any time in his life, it failed to bring forth "clear and convincing" evidence that Banister filed any false or fraudulent documents in connection with the years in controversy. Interestingly, the only controversy mentioned in the record that dealt with allegations of false documents filed by Banister was Banister's 2004 criminal indictment, subsequent 2005 prosecution and ultimate 2005 jury acquittal. The charges, "conspiracy to defraud the United States" and "willfully aiding

50

and assisting the filing of false tax returns", arose from allegations that Banister prepared three false federal income tax forms on behalf of a client. Despite an exhaustive criminal investigation and trial, the prosecution could bring forth no witness or testimony indicating that any of the documents Banister prepared were false -- even though the documents themselves were closely examined under cross-examination and direct examination. In any event, in the tax court trial the CIR's only witness failed to bring forth "clear and convincing" evidence that Banister filed any false documents indicative of intentional wrongdoing in furtherance of the specific purpose of avoiding a tax Banister believed to be owed in connection with the years in controversy.

9. Failing to file tax returns – Banister articulated significant authority (that the tax court chose to ignore) that supports his contention that he had no duty to report on himself under chapter 61 of the IRC and that the statutes and regulations governing extensions provide additional support for Banister's contention that he had no duty to file tax returns for the disputed years. Banister maintained that he had no filing requirement, and even the CIR's alleged tax return package contained forms that failed to meet the 'valid return' test, another fact that the tax court refused to consider. *See* Rev. Rul. 2005-59 at Motion For Offer Of Proof, EOR Vol. 2 C, p. 27, ¶ 4.

10. Dealing in cash – the CIR failed to bring forth any evidence at all suggesting that Banister dealt in cash indicative of intentional wrongdoing in furtherance of the specific purpose of avoiding a tax Banister believed to be owed in connection with the years in controversy.

To summarize the CIR's unfounded accusations, the tax court observes eleven "badges of fraud" criteria. The CIR provided <u>zero</u> evidence for nine of the eleven of the criteria – zero evidence of understating income, maintaining inadequate records, providing implausible or inconsistent explanations of behavior, concealment of assets, engaging in illegal activities, exhibiting an intent to mislead, exhibition of testimony lacking in credibility, filing false documents, and dealing in cash.

There were two possible "badges of fraud" criteria for which the CIR provided some plausible evidence, namely, "failing to cooperate with tax authorities" and "failing to file tax returns". However, because the preponderance standard is a less exacting standard than clear and convincing evidence, Gage v. Chappell, 13-73438, *18 (9th Cir. 7-20-2015), the evidence provided at the tax court trial reached nowhere near an indication of intentional wrongdoing intended to conceal, mislead, or otherwise prevent the collection of tax but rather indication of Banister's exercise of his rights and conduct consistent with his deeply held beliefs.

The above analysis illustrates that the CIR not only failed to articulate Banister's conduct reflecting even the remotest tendency towards intentional wrongdoing, but also it most certainly failed to articulate intentional wrongdoing on Banister's part with the specific purpose of avoiding a tax he believed to be owing for the years 2003, 2004, 2005 and 2006. Thus, the CIR has utterly failed to satisfy its burden requiring the IRS to provide clear and convincing evidence that at least some portion of Banister's alleged underpayment of tax is due to fraud.

Fraud for that purpose is defined as intentional wrongdoing, with the specific purpose of avoiding a tax believed to be owed. *See DiLeo*, 96 T.C. at 874. The IRS was required to prove that Banister intended to evade tax believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of tax and the CIR did not provide any such proof.

Based on the foregoing, I request respectfully that this honorable Court reverse and vacate the tax court's judgment. Further, I request that this Court reverse the 26 U.S.C. § 6673 penalty by not only finding that the CIR's motion for sanctions to be improperly pleaded, but also finding that the lack the necessary elements to sustain a claim of my making arguments not founded in either fact or law.   Subscribed and Submitted on this 30th day of July 2015 by:

_____

Joseph R. Banister
1805 N. Carson St., Ste C
Carson City, Nev. 89701

53

CERTIFICATE OF SERVICE

I certify that a copy of this Appellant's Informal Opening Brief, with Excerpts of the Record was sent to Appellee's counsel either electronically or via U.S. Mail on this 30th day of July 2015 to:

William Wilkins, Chief Counsel
Internal Revenue Service
1111 Constitution Ave., NW
Suite 3300
Washington, D.C. 20224

Julie C. Avetta
U.S. Department of Justice
Tax Division, Appellate Section
P.O. Box 502
Washington, D.C. 20044

Joseph R. Banister
1805 N. Carson St., Ste C
Carson City, Nev. 89701

## Certificate of Other Cases in this Court on Appeal

I state and certify that there are no other cases on appeal in this court.

## Certificate of Word Count

I state and certify that this Appellant's Opening Brief contains a total of 14,158 words using Times New Roman style in the 14 Point Font Size.

Submitted and Subscribed on this 30th day of July 2015 by:

Joseph R. Banister
1805 N. Carson St., Ste C
Carson City, Nev. 89701